UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN RAGAS** | **CIVIL ACTION** |
| **VERSUS** | **NO:   99-2684** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "K" (4)** |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This matter is reopened after the United States District Judge ("District Judge") granted the Plaintiff, John C. Ragas, Sr. ("Ragas"), the opportunity to cross-examine John F. Nitsche, M.D. ("Dr. Nitsche"), the consulting physician, regarding Dr. Nitsche's supplemental report.  (R. Doc. 24.) The matter is referred to the undersigned pursuant to **Title 42 U.S.C. § 405(g)** ("Act").[1]

**II.   Factual Summary**

The factual and procedural histories were summarized in detail in the original report and recommendation issued on May 3, 2001.  They are incorporated in the opinion as if copied *in extenso* and therefore will not be restated herein.

Upon review by the District Judge of the second report and recommendation issued on October 31, 2001, which recommended that the Commissioner's decision be affirmed, the District

---

[1]The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

Judge granted Ragas the right to cross-examine Dr. Nitsche on the substance of his supplemental report. The District Judge based his ruling on a certified mail receipt and letter in which Ragas had requested cross-examination. The District Judge noted that Ragas had not produced those materials to the undersigned magistrate for consideration in the second report and recommendation. On October 28, 2003, Ragas cross-examined Dr. Nitsche during a hearing before Administrative Law Judge ("ALJ") Carl W. Sarett.

### A.     The ALJ Findings and Ruling

Presiding ALJ Sarett complied with the mandate of the District Court and provided Ragas with the opportunity to cross-examine Dr. Nitsche. Thereafter, ALJ Sarett issued another hearing decision on April 29, 2005, finding again that Ragas was not disabled. (Tr. at 356-64.) The relevant period for consideration of Ragas's disability status for purposes of Disability Insurance Benefits[2] ("DIB") is December 31, 1995.[3]

In the opinion, the ALJ found that Ragas suffered inflammatory arthritis of the hands, hips and knees that was more than "nonsevere." (Tr. at 363, Finding 3.) Furthermore, he found that Ragas's impairments did not meet or equal the criteria of any impairment in the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4, including but not limited to Section 1.00. (Tr. at 363, Finding 4.)

ALJ Sarett found that before Ragas turned 50 years old, he had the residual functional capacity to perform sedentary work with some limitations. However, he found that Ragas was

---

[2] Ragas's requested benefits are erroneously referred to as "Supplemental Social Income Benefits" in various documents within the record. However, Ragas applied for Disability Insurance Benefits.

[3] A plaintiff must prove that his disability arose on or before he expiration of his insured status. *Anthony v. Sullivan*, 954 F.2d 289, 295 (Tr. at 187, 356.) Evidence of a degenerating condition after the expiration of a claimant's insured status is not relevant to the commissioner's Title Disability analysis. *Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995). Therefore, Ragas's medical condition up to December 31, 1995 is relevant.

precluded from performing his past relevant work as a gas company service man. (Tr. at 363, Findings 7, 8.) After considering the vocational expert's testimony and Ragas's impairments, functional capacity, age, education, and work experience, ALJ Sarett concluded there was a significant number of jobs existing in the national economy which Ragas could perform. Such jobs included positions as an information clerk, telephone operator dispatcher, and gate guard. Consequently, ALJ Sarett found that Ragas was not disabled under the Act at any time prior to reaching age 50. (Tr. at 363, Finding 11.)

### B.    Remaining Procedural History

The Appeals Council denied Ragas's request for review on February 16, 2006, rendering ALJ Sarett's decision of April 29, 2005 final. Thereafter, the Commissioner filed a motion seeking to reinstate the case on the Court's active docket, which was granted by the District Judge.

After reinstatement of this matter on the Court's docket, Ragas now contends that the ALJ's decision is not based upon substantial evidence because he cannot perform even sedentary jobs given his residual functional capacity, impairment in his hands, and limited capacity to sit and stand due to his chronic venous insufficiency. He also contends that the ALJ failed to give enough credence to his complaints of pain through the administrative process. He therefore seeks a determination that the decision of the ALJ was not based upon substantial evidence and a reversal of the ALJ's findings pursuant to sentence four of Title 42 U.S.C. Section 405(g).

### III.    Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*,

192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo,* or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

A single piece of evidence will not satisfy the "substantial evidence" test if the ALJ ignores or fails to resolve a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commissioner applies a five-step sequential evaluation process. The rules applicable in this evaluation process dictate that: (1) a claimant who is working and engaging in a substantial gainful

activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.  *See Villa v. Sullivan*, 895  F.2d 1019, 1021 (5th Cir. 1990).  The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five.  *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.    Analysis**

    **A.    Pain and Credibility of Ragas's Complaints**

Ragas contends that the ALJ did not give proper weight to his complaints of pain.  He therefore contends that the ALJ's decision is not based upon substantial evidence.

The Commissioner contends that the ALJ properly assessed Ragas's credibility in determining the degree and impact of pain on his ability to perform work activities.  The Commissioner therefore contends that the ALJ's opinion is based upon substantial evidence.

In *Abshire v. Bowen,* 848 F.2d 638 (5th Cir. 1988) (per curiam), the Fifth Circuit stated that "an ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints[,] unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain."  *See Abshire* 848 F.2d at 642.

The ALJ considered Ragas's assertions relative to his symptomatology, pain, functional limitations, and restrictions on activities of daily living, particularly before December 3, 1995, in light of the factors set forth in 20 C.F.R. § 416.929 and SSR 96-7p. (Tr. at 361.) He found that Ragas's complaints of pain were exaggerated and lacked corroboration and substantiation in the medical record. Therefore, the ALJ did not credit them. (Tr. at 361.)

In assessing the credibility of assertions of disabling pain, the ALJ is free to consider whether: (1) the onset of pain is related to a precise event;[4] (2) there are consistent notes of pain in the medical record, including diagnosis and prescription of pain medications;[5] and (3) there is a consistency with the medical evidence.[6] The ALJ may not ignore the subjective complaints of the claim if supported by medical signs and findings. *Veal v. Bowen* 833 F.2d 693, 698 (7th Cir. 1987).

The medical signs and findings here support the ALJ's credibility assessment of Ragas. The ALJ rejected Ragas's subjective testimony that he experienced disabling levels of pain on a daily basis. In reaching his conclusion, the ALJ indicated that he considered Ragas's daily living activity account in March 1994, in which Ragas maintained that he had limited mobility in his leg and foot. However, Ragas performed household maintenance activities, including cutting his lawn once a week on a riding mower and cooking two or three times a week. (Tr. at 193.) The ALJ further emphasized that Ragas recreationally played the bass guitar and could drive a car. (Tr. at 193.)

---

[4] Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *See Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). *See Duncan v. Harris*, 518 F. Supp 751, 759 (E.D. Ark. 1980).

[5] *See Carpenter v. Heckler*, 733 F.2d 591, 592-93 (8th Cir. 1984).

[6] *See Holland v. Heckler*, 768 F.2d 277, 281 (8th Cir. 1985).

The medical record of March 30, 1992 indicates that Ragas returned to check the pain in his left foot and reported that it felt better. (Tr. at 231.)  In contrast, on March 30, 1992, he complained that the pain was back and was diagnosed with arthritis. (Tr. at 231.)

In January 1998, Dr. Nitsche performed consultative examination on Ragas which revealed active flexion of his lumbar spine without complaints of back or leg pain. (Tr. at 336.)  Ragas also had full range of motion of all peripheral joints with some complaint of tenderness to palpation about the lateral aspect of the right hip and the anterior aspect of the right knee. (Tr. at 337.)

Additionally, Dr. Brent Millet ("Dr. Millet") examined Ragas in July 1994, and found that Ragas gave a history that was compatible with an episodic inflammatory arthritis of the right knee and right great toe that was suggestive of gout. (Tr. at 211.)  Dr. Millet found that there was no objective evidence or physical findings present during his examination. (Tr. at 211.)  However, he noted that there was mild radiographic evidence of osteoarthritis of the right knee present. (Tr. at 212.)

In light of the above evidence, the Court finds that the ALJ's opinion that Ragas's pain was not disabling is supported by substantial evidence.  While there was evidence of pain, the pain would wax and wane and was not constant and unremitting.

**B.     Sedentary Jobs and Residual Functional Capacity**

Ragas contends that despite the vocational expert's opinion, his physical limitations preclude him from performing even sedentary jobs because his hands are impaired and he has a limited capacity to sit and stand due to his chronic venous insufficiency.

The Commissioner contends that (1) the ALJ properly found that Ragas retained the residual functional capacity for a significant range of sedentary work and (2) the medical evidence, including

Dr. Nitsche's assessments, support the ALJ's residual functional capacity assessment.

The ALJ noted that there was mild radiographic evidence of osteoarthritis of Ragas's right knee. (Ex. 13.)   He also noted that Dr. Nitsche confirmed that Ragas had (1) probable early osteoarthritis of the digital interphalangeal joints of the left index and right middle fingers; (2) intermittent musculoligmentous strain of the cervical spine; (3) intermittent musculogimentous strain of the lumbar spine; and (4) right buttock pain probably related to lumbosacral spine strain. (Tr. at 359.)

The ALJ found that the medical evidence prior to Ragas's date of last injury, on December 31, 1995, demonstrates that Ragas had the residual functional capacity for sedentary work with a grip strength limited to 80% of normal.  Furthermore, he could not walk or stand for prolonged periods or repetitively or finely manipulate his hands.  He also found that Ragas might have to occasionally use a cane and should not be exposed to extreme temperatures, work at heights or near moving machinery, or use foot controls.  (Tr. at 361.)

Considering these limitations, the vocational expert opined that Ragas could perform other sedentary work existing in the state of Louisiana and the nation, including work as an information clerk, telephone operator, dispatcher, or gate guard.  According to the vocational expert, these jobs would not require an unusual degree of use of the hands. (Tr. at 361.)  The ALJ further noted that Ragas's counsel's questions to Dr. Nitsche, an expert in Rheumatology, did not establish that he was unable to do sedentary work prior to the last date insured. (Tr. at 362.)

Relying on SSR 96-9p, the ALJ found that merely because Ragas could not perform some sedentary jobs did not mean he is disabled from all sedentary jobs.  The ALJ found that the vocational expert's testimony is substantiated by the medical record and that while Ragas cannot

work as a gas company service man as he did before December 31, 1995, he could still perform a significant number of jobs in the national economy. (Tr. at 362.)

The record also supports the ALJ's finding. According to the record transcript, Dr. Nitsche testified that the first time he examined Ragas, he exhibited a diminished crips joint because of the osteoarthritis in his hands. However, the second time he saw him, Ragas demonstrated a normal crips joint and the normal use of his hands. (Tr. at 461-62.) Dr. Nitsche was shown reports of Dr. Kamran Rafiq ("Dr. Rafiq") who examined Ragas in 2003. Dr. Rafiq concluded that in March 2003, Ragas could not use his hands for repetitive motion. However, Dr. Nitsche testified that he believed that Ragas's musculoskeletal problems could vacillate, and thus, it was difficult for him to reconcile his exam results with later examinations by different physicians because he did not have an opportunity to see Ragas during those years. (Tr. at 468-69.) It should be noted that the Court is precluded from considering the 2003 report of Dr. Rafiq because the examination occurred eight years after the last date that Ragas was insured for benefits. *Id.*

Dr. Nitsche opined that based on his examination, Ragas should be able to stand for at least one hour at a time. (Tr. at 470-71.) He also testified that he conducted a functional assessment of Ragas, in which Ragas lifted weights in the office. (Tr. at 471.) Based on the functional assessment, Dr. Nitsche determined that the subjective and objective estimates coincided, and thus illustrated that Ragas was able to lift ten pounds. (Tr. at 471.)

After Dr. Nitsche's testimony, the ALJ then called Edward Ryan ("Ryan"), a vocational expert, to testify regarding Ragas's condition from February 1991 to July 1999, when Ragas was 41 to 50 years of age. ALJ Sarett asked Ryan if the sedentary jobs that the first vocational expert set forth were jobs that Ragas could perform given his physical restrictions. Ryan testified that in his

opinion, each of the jobs found by the prior vocational expert were within the sedentary range and did not require an unusual amount of use of the hands or climbing. (Tr. at 477.)

Ryan conceded upon cross-examination that the proposed "information clerk" position was exertionally mixed and could be categorized as unskilled or semi-skilled. (Tr. at 478.) He further testified that approximately 25% of the 913 total assembly jobs would be eliminated because of Ragas's restrictions on fine manipulation. (Tr. at 490.)

Ryan also testified that the "dispatcher" position was a sedentary job that did not require any skills at the entry level for which there were 545 jobs in Louisiana and 32,489 in the nation. (Tr. at 496.) Ryan found that the "telephone operator" position also did not require strong grip strength. Each of these jobs would require a maximum of two hours of walking but probably only one hour or less of walking. (Tr. at 498-99.) In light of Ryan's testimony, the ALJ's opinion that there are substantial jobs in the economy that Ragas could perform is supported by the evidence.

Finally, Ragas contends that the ALJ's decision is not based upon substantial evidence because he does not address the presence of his chronic venous insufficiency with any certainty. However, the ALJ does mention Dr. Nitsche's examination, which occurred in February of 1996. During the examination, Dr. Nitsche concluded that Ragas had no symptoms of claudication, palpitations, syncope, or venous insufficiency. (Tr. at 358.) He also noted that there was no evidence of leg ulcers, atrophic skin changes, stasis dermatitis, peripheral edema, or superficial variscosities, but Ragas exhibited normal proximal and distal muscle strength in both upper and lower extremities. (Tr. at 358.)

While Dr. Nitsche noted that as of 2003, review of the supplemental medical information demonstrates that Ragas suffered from chronic venous insufficiency, he did not observe chronic

venous insufficiency when he saw Ragas in 1996. Therefore, the ALJ appropriately did not consider the later acquired medical because he was restricted to reviewing medicals that existed during the earlier period before Ragas's date of last insured. The ALJ did further note however, that had Ragas filed an application for supplemental security income, he would have been deemed disabled as of July 27, 1999, but not under the DIB provisions of the regulations as of the date he was last insured, December 31, 1995. (Tr. at 357.) The ALJ's finding is supported by substantial evidence of record.

**V.     Recommendation**

Accordingly,

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying John Ragas's Disability Insurance Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 7th day of December 2007

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**